IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CYNTHIA S.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner of Social Security,[2]

Defendant.

Case No. 3:20-cv-01044-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Cynthia S. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted as the appropriate defendant. *See* FED. R. CIV. P. 25(d)(1).

§ 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I. PLAINTIFF'S APPLICATION**

Plaintiff was born in February 1977, making her forty years old on April 17, 2017, her alleged disability onset date. (Tr. 76.) Plaintiff has at least a high school education and past relevant work experience as a manager, tank attendant, phone sales, and buyer. (Tr. 284-85.) In

her application, Plaintiff alleged disability due to fibromyalgia with chronic wide-spread pain; bilateral plantar fasciitis; incontinence; diarrhea; neck, shoulder, and upper back pain; bilateral hand pain; chronic midline low back pain, fibro-fog/cognitive and mental difficulties; trouble with sleep; and nerve pain. (Tr. 283.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on May 11, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 140.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing on September 23, 2019. (Tr. 53-74.) On October 16, 2019, the ALJ issued a decision denying Plaintiff's application. (Tr. 34-45.) On May 27, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision.

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 36-45.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 17, 2017, the alleged disability onset date. (Tr. 36.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "fibromyalgia; urinary incontinence; and fecal incontinence." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 38.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff "can lift/carry 25 pounds frequently and 50 pounds occasionally[,]" (2) Plaintiff "can stand/walk six hours and sit six hours during an eight-hour workday[,]" and (3) Plaintiff "can perform tasks within close proximity to a bathroom, including that work must be indoors rather than outside away from bathroom facilities." (*Id.*) At step four, the ALJ concluded that Plaintiff could perform her past relevant work. (Tr. 43-44.) Although the ALJ was not required to perform a step five analysis, the ALJ made alternative findings and concluded that Plaintiff was not disabled because a

significant number of jobs existed in the national economy that she could perform, including work as a laundry worker and janitor. (*Id.*)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons supported by substantial evidence to reject her testimony about fecal and urinary incontinence. As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of benefits.

### I. PLAINTIFF'S SYMPTOM TESTIMONY

#### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity

and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B. Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 39, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony. The Court finds that the ALJ satisfied that standard here.

**1. Failure to Seek Treatment**

The ALJ first discounted Plaintiff's incontinence testimony on the ground that she did not seek treatment for incontinence until July 2018, and at that time she reported that she experienced incontinence only "occasionally." (Tr. 40, citing Tr. 1018, noting that at a July 9, 2018, appointment, Plaintiff reported fecal incontinence "occasionally" and urinary incontinence "at times").

Plaintiff correctly points out that she reported incontinence earlier than July 2018, including to neurologist Dr. Finch in April 2017, but at that visit she reported incontinence along with a long list of other symptoms and was not seeking treatment for incontinence. (Pl.'s Reply at 3-4, citing Tr. 494-96.) Plaintiff visited Dr. Finch for a neurological consultation with a chief complaint of fibromyalgia, and Dr. Finch assessed

Plaintiff as occupationally disabled based on her fibromyalgia, not her incontinence.[3] (*See* Tr. 490-96.)

Similarly, Plaintiff notes she reported incontinence in January 2018 (Pl.'s Reply at 4), but she did so at a consultative medical examination with Dr. Derek Leinenbach, not to seek treatment for her incontinence. (Tr. 775-58.) In fact, Dr. Leinenbach identified no functional limitations associated with Plaintiff's incontinence. (Tr. 777-78.)

Plaintiff has cited no medical records demonstrating that she sought treatment for incontinence prior to July 2018, and the Court finds that Plaintiff's failure to seek treatment for her incontinence until more than a year after her alleged onset date was a clear and convincing reason for the ALJ to discount her symptom testimony. *See, e.g.*, *Kallenbach v. Berryhill*, 766 F. App'x 518, 521 (9th Cir. 2019) ("The ALJ provided specific, clear, and convincing reasons for discounting [the claimant's] testimony, including . . . [the claimant's] failure to seek and adhere to prescribed treatment" (citing *Bray*, 554 F.3d at 1227, *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002), and *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012))).

**2. Prior Inconsistent Statements**

The ALJ also discounted Plaintiff's testimony regarding her incontinence in light of inconsistencies between Plaintiff's testimony and her prior statements to medical providers. (Tr. 40-41.)

///

[3] Plaintiff argues that Dr. Finch opined that Plaintiff's conditions, including incontinence, disable her from all occupations (Pl.'s Reply at 4 n.5), but Dr. Finch's conclusion clearly relates only to Plaintiff's fibromyalgia. (*See* Tr. 496.) Plaintiff does not challenge in this appeal the ALJ's findings regarding her fibromyalgia.

Inconsistencies between a claimant's testimony and prior reports to a provider is a clear and convincing reason to discount a claimant's testimony. *See, e.g.*, *Schmitz v. Saul*, 857 F. App'x 368, 371 (9th Cir. 2021) (holding that the ALJ appropriately "discredited [the claimant's] symptom testimony in part because of [the claimant's] inconsistent reports of her physical symptoms to different providers" where the record "supports the ALJ's noted inconsistencies").

The ALJ's finding of inconsistencies was supported by substantial evidence in the record here. Specifically, Plaintiff testified at the hearing that she has "constant [urinary] incontinence" (Tr. 64), but 2018 treatment records cited by the ALJ reflected her self-report of urinary incontinence "near daily." (Tr. 775, 790.) The Court agrees with the ALJ that "constant" means something different than "near daily."

In addition, Plaintiff alleged disability due to fecal and urinary incontinence necessitating frequent use of the bathroom (Tr. 39), but she reported to providers that her fecal incontinence occurs only "[a]bout once per month[,]" "occasionally," and "tends to occur when she's trying to get somewhere or in a state of worry."[4] (Tr. 775, 790, 839, 1018.) The ALJ appropriately concluded that Plaintiff's prior statements about fecal incontinence were inconsistent with her testimony that incontinence caused constant interruption at work. (Tr. 41.)

Based on the Court's review of the record, the ALJ's conclusion that Plaintiff's urinary and fecal incontinence occur less frequently than Plaintiff alleged is supported by substantial evidence in the record, and therefore the ALJ did not err in discounting Plaintiff's symptom

[4] Plaintiff correctly notes that the ALJ mistakenly stated that Plaintiff's urinary continence occurs primarily when Plaintiff is "in a hurry or worried," whereas the medical record the ALJ cited refers instead to Plaintiff's fecal incontinence. (Tr. 41.) Nevertheless, as noted, the ALJ cited other evidence in the record demonstrating that Plaintiff's testimony about her urinary incontinence was inconsistent with her prior statements to providers.

testimony on this basis. *See Eblen v. Saul*, 811 F. App'x 417, 420 (9th Cir. 2020) (holding that the ALJ appropriately discounted the claimant's testimony based on his prior inconsistent statements to medical providers).

**3. Conflicting Medical Evidence**

The ALJ also discounted Plaintiff's symptom testimony based on conflicting medical evidence. (Tr. 39, 41.) It is appropriate for an ALJ to discount a claimant's symptom testimony based on contradictory medical evidence. *See, e.g.*, *Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir. 2019) (holding that the ALJ appropriately discounted the claimant's testimony based on, among other reasons, the presence of "contradictory medical evidence" in the record).

Here, the ALJ noted that Plaintiff underwent testing for fecal and urinary incontinence with a gastroenterologist in February 2019, and the gastroenterologist recommended that Plaintiff adjust her diet by increasing her fiber intake. (Tr. 41, citing Tr. 830, 841.) Thus, the ALJ's conclusion that conservative measures, "such as increasing fiber intake . . . , were expected to improve the claimant's symptoms" was supported by substantial evidence in the record.[5] (Tr. 41, citing Tr. 801-03.) Plaintiff does not appear to challenge that finding on appeal, nor does she challenge the ALJ's evaluation of the gastroenterologist's opinion, and the Court finds that the ALJ did not err by discounting Plaintiff's subjective symptom testimony as to disabling fecal incontinence on the ground that it conflicted with the medical evidence.

///

[5] With respect to Plaintiff's urinary incontinence, the ALJ cited July 2019 chart notes reflecting that Plaintiff opted to proceed with surgical intervention to treat her urinary incontinence and concluded that surgery was "expected to improve the claimant's symptoms." (Tr. 41.) That Plaintiff's urinary incontinence symptoms were expected to improve with surgery is not a clear and convincing reason to discount her symptom testimony leading up to the surgery, but the ALJ's error was harmless in light of his other valid reasons for discounting Plaintiff's symptom testimony.

In summary, the ALJ found that Plaintiff's urinary and fecal incontinence were severe impairments. The ALJ committed no harmful error in discounting Plaintiff's testimony that her incontinence prevented her from working, and the ALJ appropriately accounted for her limitations by limiting Plaintiff to "tasks within close proximity to a bathroom, including that work must be indoors rather than outside away from bathroom facilities." (Tr. 38.)

**CONCLUSION**

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 17th day of February, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge